# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM L. FRY,**

    Plaintiff,

    v.                                                  Case No. 18-CV-1573

**ASCENSION HEALTH MINISTRY SERVICES**
**d/b/a COLUMBIA ST. MARY'S,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT

William Fry sues his former employer, Ascension Health Ministry Services, d/b/a Columbia St. Mary's ("Columbia"), for discrimination based on sexual orientation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Count One), religious discrimination in violation of Title VII and the First Amendment (Count Two), retaliation for opposing sex and religious discrimination in violation of Title VII and § 1981 (Count Three), age discrimination in violation of the Age Discrimination in Employment Act of 1967 (Count Four), negligent supervision (Count Five), and violation of the Wisconsin Fair Employment Act (Count Six). (Second Am. Compl., Docket # 23.)

Columbia moves to dismiss, with prejudice, Count Two, Count Three, Count Five, Count Six, and any claims alleged under § 1981 and the First Amendment for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Fry has not opposed the motion. For the reasons that follow, Columbia's motion to dismiss is granted.

## BACKGROUND

Fry is an adult male whose "sexual orientation is homosexual, and his religious affiliation is Christian, but he is not Catholic." (Second Am. Compl. ¶ 9.) Fry is a devout member of the Episcopal church. (*Id.*) Fry alleges that Columbia is a not-for-profit hospital corporation and Ascension is the largest Catholic healthcare system in the world. (*Id.* ¶ 10.) Fry alleges that Columbia is governed by religious rules developed by the Catholic Church and its stated mission is to follow the teachings of the Catholic Church. (*Id.* ¶¶ 11–12.)

Fry, a registered nurse, was employed by Columbia as a Director of Patient Services for Behavioral Health until he was demoted on May 5, 2017 by his direct supervisor, Kathy McEwen. (*Id.* ¶ 13.) Fry was ultimately terminated from employment on May 15, 2017 by McEwen. (*Id.* ¶ 18.) Fry alleges that despite stellar reviews of his job performance, McEwen demoted and ultimately terminated him and he was replaced with a younger individual. (*Id.* ¶ 21.) Fry alleges that during his employment at Columbia, he was subjected to harassment and derogatory comments based on his sexual orientation. (*Id.* ¶ 27.) Fry alleges that he was ultimately terminated from employment due to his sexual orientation. (*Id.* ¶ 34.)

Fry further alleges that he was discriminated against based on his religion because Columbia has a policy of praying before certain meetings, which made Fry uncomfortable because Episcopalians are not comfortable with public displays of prayer outside the church. (*Id.* ¶¶ 22, 41.) Fry alleges that he was terminated from his employment because of his religious affiliation. (*Id.* ¶ 46.) Fry alleges that he complained to Columbia about McEwen's conduct and was retaliated against for opposing sex and religious discrimination in the workplace. (*Id.* ¶¶ 50–51.)

Fry also alleges that he was discriminated against based on his age. (*Id.* ¶ 58.) Fry was fifty-six years old at the time of his demotion and termination. (*Id.* ¶ 19.) Finally, Fry alleges that McEwen and Columbia were negligent (*id.* ¶ 62) and Columbia violated the Wisconsin Fair Employment Act (*id.* ¶¶ 71–74).

**STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the

presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

**ANALYSIS**

Columbia moves to dismiss, with prejudice, Count Two, Count Three, Count Five, Count Six, and any claims alleged under § 1981 and the First Amendment for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Columbia does not seek to dismiss Count One (to the extent it alleges a violation of Title VII) or Count Four. Again, Fry has not opposed Columbia's motion. I will address each cause of action in turn.

*1.     Count Two – Religious Discrimination*

In Count Two, Fry alleges that he was discriminated against based on his religion in violation of Title VII and the First Amendment. Columbia argues that Count Two must be dismissed as a matter of law. As to the Title VII claim, Columbia argues that as a religious organization, it is exempt from Title VII's provisions barring discrimination based on religion. (Def.'s Br. at 5, Docket # 25.) As to the First Amendment claim, Columbia argues that Fry fails to allege that Columbia is a state actor. (*Id.* at 13–14.)

Title VII exempts religious organizations from its provisions barring discrimination on the basis of religion:

> This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of

> individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). In determining whether an institution or entity is truly a religious organization entitled to assert the exemption, the court must "look at all the facts," and in making this inquiry, "[i]t is appropriate to consider and weigh the religious and secular characteristics of the institution." *Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1036 (N.D. Iowa 2006) (internal quotation and citation omitted). Such facts to consider are: the "religious nature" of the purported "religious organization"; whether it was supported and controlled by a religious corporation; whether and to what extent its purpose was making the interrelated religious/service mission of the pertinent religious denomination a reality; and whether the institution was founded by sectarian entities. *Id.*

Fry does not contend that Columbia is not a religious corporation entitled to assert the exemption found in § 2000e-1(a). In fact, Fry specifically pleads that Columbia is a not-for-profit hospital and that Ascension is the largest Catholic healthcare system in the world; Columbia is governed by religious rules developed by the United States Conference of Catholic Bishops; and Columbia's stated mission is to follow the teachings of the Catholic Church. (Second Am. Compl. ¶¶ 10–12.) To the extent Fry alleges a First Amendment violation within Count Two, Fry does not allege that Columbia is a state actor. *See Dunn v. Washington Cty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005) (claims under the First Amendment alleged against non-state actor fail as a matter of law). On the contrary, Fry alleges that Columbia is a not-for-profit hospital corporation. (Second Am. Compl. ¶ 10.)

5

Thus, as to Count Two, Fry has pleaded himself out of court. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal quotation and citation omitted). Count Two is dismissed.

    2.    *Count Three – Retaliation*

In Count Three, Fry alleges that he was terminated from his employment in retaliation for opposing sex and religious discrimination in the workplace in violation of Title VII and § 1981. (Second Am. Compl. ¶ 51.) As to Fry's Title VII retaliation claim, Columbia argues the claim must be dismissed because Fry failed to exhaust his administrative remedies. (Docket # 25 at 7.)

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A plaintiff may, however, pursue claims that are like or reasonably related to the allegations of the EEOC charge and growing out of such allegations. *Id.* In his EEOC charge dated December 4, 2017, Fry alleged discrimination based on sex, age, and religion. (Ex. A to Second Am. Compl., Docket # 23-1.) Fry did not check the box for retaliation. (*Id.*) The EEOC confirmed that it investigated Fry's allegations that he was discriminated against on the basis of his sex (male, sexual orientation), religion (non-Catholic), and age (Year of Birth 1961). (Ex. B to Second Am. Compl., Docket # 23-2.)

Normally, retaliation and discrimination charges are not considered "like or reasonably related" to one another. *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). However, an alleged incident of retaliation that occurred *after* a

6

plaintiff has already filed an EEOC charge can serve as the basis for a Title VII claim. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 481–83 (7th Cir. 1996). This is because "for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., . . . a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). Here, Fry does not allege that he was retaliated against for filing his EEOC charge. Rather, he alleges that he was terminated on May 15, 2017 (Second Am. Compl. ¶ 18) in retaliation for opposing sex and religious discrimination in the workplace (*id.* ¶ 51). Fry's EEOC charge is dated December 4, 2017. Thus, Fry does not allege any acts of retaliation occurring after filing the EEOC charge. For this reason, Fry failed to exhaust his administrative remedies as to his Title VII retaliation claim.

Fry also alleges retaliation in violation of § 1981. While § 1981 claims do not require a plaintiff to file a charge of discrimination with the EEOC, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004), § 1981 only prohibits racial discrimination, including discrimination based on ancestry or ethnic characteristics, *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Section 1981 provides that "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." It does not protect discrimination based on religion, *see Saint Francis Coll.*, 481 U.S. at 613, or sex, *see St. Louis v.*

*Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984). Thus, Fry's retaliation claim under § 1981 also fails. Count Three is dismissed.

    3.    *Count Five – Negligent Supervision*

In Count Five, Fry alleges that McEwen was negligent in her duties as Fry's supervisor and that Columbia was negligent in its duties of hiring, supervising, and training its employees. (Second Am. Compl. ¶¶ 62–66.) Columbia argues that under Wisconsin law, negligence claims brought by employees or former employees against their employers are barred by the exclusive remedy of the Wisconsin Worker's Compensation Act ("WCA"), Wis. Stat. Ch. 102. (Docket # 25 at 10.) In *Johnson v. Hondo, Inc.*, 125 F.3d 408, 418 (7th Cir. 1997), the court found that the Wisconsin Supreme Court has "repeatedly held" that the WCA precludes injured employees from maintaining negligence actions against their employers and fellow employees. The *Johnson* court found that a count alleging "negligent supervision and retention" fell "squarely within the reach of § 102.03(2) and was properly dismissed." *Id.* Thus, Count Five does not state a claim upon which relief may be granted and is dismissed.

    4.    *Count Six – Violation of Wisconsin Fair Employment Act*

In Count Six, Fry alleges violation of the Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31, *et seq.* The WFEA provides that "no employer . . . may engage in any act of employment discrimination . . . against any individual on the basis of age . . . [or] disability . . . ." Wis. Stat. § 111.321. The Wisconsin Department of Workforce Development's Equal Rights Division receives, investigates, and holds hearings on complaints charging discrimination in violation of the WFEA. *Id.* § 111.39. In 2006, the United States District

8

Court for the Eastern District of Wisconsin determined that Wisconsin state courts had been somewhat divided on whether the WFEA creates a private right of action. *Martin v. Nw. Mut. Life Ins. Co.*, No. 05-CV-209, 2006 WL 897751, at *3–4 (E.D. Wis. Mar. 31, 2006) (citing cases). The court ultimately concluded that Wisconsin recognized a private right of action under the WFEA only in limited circumstances—namely, when a plaintiff seeks a remedy that was unavailable during the administrative proceedings. *Id.* at *4. However, as Judge Peterson explains:

> [S]ince then, legislative retooling has confirmed that the WFEA does not provide a general private right of action. A 2009 amendment allowed individuals who prevailed on an administrative claim to bring a private suit for compensatory and punitive damages. The legislature repealed the amendment a short time later. Although a private right of action under the WFEA existed in that limited window between 2009 and 2012, the window has since closed. *Velyov*, 2014 WL 5312656, at *3 ("WFEA violations occurring between July 1, 2009 and April 19, 2012 may still be the basis of a private cause of action for punitive and compensatory damages."). This brief interlude effectively codified Martin's take on Wisconsin law: the existence of the amendment itself confirmed that prior to its enactment, individuals did not have a general private right of action under the WFEA. *See, e.g., Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 767 (E.D. Wis. 2012) ("Prior to the enactment of 2009 Wisconsin Act 20, a plaintiff could not maintain a private cause action under WFEA.... [T]he plaintiff can only maintain a private cause of action under the WFEA if any alleged discrimination occurred on or after July 1, 2009.").

*Sharp v. Stoughton Trailers, LLC*, No. 15-CV-598, 2016 WL 3102241, at *2 (W.D. Wis. June 2, 2016). Fry alleges that he was discriminated against between December 16, 2016 and May 15, 2017. (Ex. A to Second Am. Compl.) Thus, as the WFEA does not afford a plaintiff a general private right of action unless the plaintiff brings a claim for discrimination occurring between July 1, 2009 and April 19, 2012, Fry's complaint does not state a claim under the WFEA. Thus, Fry's WFEA claim is dismissed.

9

*5.  General First Amendment and § 1981 Claims*

Although Fry does not allege separate causes of action under the First Amendment or § 1981, these general allegations appear throughout the Second Amended Complaint. (Second Am. Compl. ¶¶ 1, 2, 33, 34, 36, 37, 43, 46, 51, 54.) Most notably, Fry alleges throughout his cause of action for discrimination on the basis of sexual orientation (Count One) that he is alleging a violation of both Title VII and § 1981. As stated above, § 1981 prohibits race discrimination. Nowhere in Fry's Second Amended Complaint does he allege discrimination based on race. Thus, to the extent he alleges any violation of § 1981, those causes of action are dismissed. Also, Fry does not allege Columbia is a state actor. Thus, to the extent Fry alleges any violation of the First Amendment, those causes of action are also dismissed.

**CONCLUSION**

Fry alleges several causes of action that have no basis in law. For example, he alleges violations of § 1981, despite not alleging race discrimination; he alleges violations of the First Amendment, despite not alleging Columbia is a state actor; he alleges retaliation, without exhausting his administrative remedies; he alleges violations of the WFEA, despite no private cause of action existing; and he alleges negligent supervision, despite case law stating the WCA is the exclusive remedy. Columbia moves to dismiss these causes of action with prejudice. This is the third iteration of Fry's complaint. Fry is represented by counsel. And there is nothing Fry can do to properly plead these causes of action. Therefore, any further amendment would be futile. For these reasons, Columbia's motion to dismiss is granted. Count Two, Count Three, Count Five, Count Six, and any claims alleged under § 1981 and the First Amendment are dismissed with prejudice for failure to state a claim upon which relief can be granted.

Fry may proceed on Count One (pursuant to Title VII) and Count Four (ADEA discrimination).

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for partial dismissal of the second amended complaint (Docket # 24) is **GRANTED**. The following counts are dismissed, with prejudice, from Fry's Second Amended Complaint: Count Two; Count Three; Count Five; Count Six; any claims alleged under § 1981; and any claims alleged under the First Amendment.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge